**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TENNESSEE**
**AT WINCHESTER**

| | |
|---|---|
| **PHILLIP ROBERTS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | )   **Docket No. 4:18-CV-00004** |
| **COFFEE COUNTY, TENNESSEE,** | ) |
| **JOHN CARROLL, CHASE STRANGE,** | ) |
| **and DAKOTA LILES,** | ) |
| | ) |
| **Defendants.** | ) |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

Come the defendants, by and through counsel, and file this Memorandum of Law in

Support of their Motion for Summary Judgment. In support, the defendants state as follows:

## PERTINENT ALLEGATIONS IN THE COMPLAINT

Plaintiff filed his Complaint against the defendants on February 7, 2018. He brings just

one cause of action under 42 U.S.C. § 1983 for "violation of the right to be free of punishment

without due process of law." (Doc. 1).

Plaintiff was a pre-trial detainee in the Coffee County Jail in May and June of 2017. (Id).

The first part of the *Complaint* involves allegations that Plaintiff was attacked by a group of

inmates on three separate occasions while incarcerated at the Jail. (Id). Plaintiff claims that his

pleas to be moved to another pod were ignored by officers Carroll and Strange, and that the

officers were deliberately indifferent by failing to take any action to protect him from the

ongoing threat to his health and safety. (Id). Plaintiff further avers that Coffee County has a

"custom" of ignoring threats to inmate safety, ignoring inmate grievances about safety, and

leaving unpunished the inmates who engage in physical violence against other inmates. (Id). By

failing to take action in response to the Plaintiff's grievances, the County allegedly ratified the misconduct of the deputies in failing to move or protect Plaintiff. (Id).

The second portion of the *Complaint* claims that officer Liles intentionally and maliciously slammed Plaintiff's arm in the pie flap of his cell door, causing him pain and injury. (Id). Plaintiff avers that defendant Liles employed excessive force and inflicted punishment on the plaintiff without due process of law. (Id).

## STATEMENT OF FACTS

### Inmate on Inmate Assaults

On May 11, 2017, Plaintiff was booked into the Coffee County Jail and assigned to a cell in AD pod.[1] (Declaration of Frank Watkins, bates stamp doc. # 1). Officer Jonathan Carroll was one of two classification officers working at the Coffee County Jail in May 2017. (Declaration of Jonathan Carroll ¶ 4). Plaintiff did not present with any indicators for protective custody or anything else that would denote plaintiff would be at a higher risk for assault. (Carroll Decl. ¶ 7; (Watkins Decl., bates stamp doc. 3-4 ). Plaintiff's booking charges were nonaggressive, Plaintiff was not suicidal, affiliated with a gang, or known to have physical altercations with other inmates. (Carroll Decl. ¶ 8). Officer Carroll had no reason to believe that Plaintiff would be at risk for assault by another inmate while housed in AD. (Carroll Decl. ¶ 9). Plaintiff himself testified that he had never had a problem with any inmate during his numerous, previous incarcerations at the Coffee County Jail. (Deposition of Philip Roberts, pg. 16).

---

[1] AD pod is not an unusually dangerous area within the jail. (Watkins Decl. ¶ 5). AD pod does not have a long-standing, documented, or pervasive problem with inmate on inmate assaults, and is one of few pods where inmates have the opportunity to work. (Watkins Decl. ¶ 5). AD pod is routinely monitored by corrections deputies both on the floor and in the watch towers. (Watkins Decl. ¶ 4).

Nonetheless, Plaintiff was displeased with his cell assignment and "tried to refuse" going to AD pod:

Q: What do you mean you tried to refuse?

A: Because it's a snitch pod. Its where informants are housed. I've always went to BC every time due to where I live in town, people I associate with, etcetera. They try to put you where you're supposed to – you know, where you're not going to have problems, etcetera, when you come in. It's called the intake classification. (Roberts Depo, pg. 13).

While in booking awaiting his cell assignment, Plaintiff told Officer Carroll that he "wasn't going to a rat pod." (Roberts Depo., pg. 16). He further stated, "Look, I can't go in that unit. There's informants in there that I know have tried to set me up. There's informants in there that I don't want to be around, and I'm just not going to go there. I'm going to have a problem in there." (Roberts Depo., pg. 16-17). Officer Carroll responded to Plaintiff that he would look into it. (Roberts Depo., pg. 16).

At no point did Plaintiff tell Officer Carroll the names of the individuals in AD that he was concerned about. (Carroll Decl. ¶ 14). Officers Carroll and Strange had no knowledge of any issues between Plaintiff and Steven Bostic, Kevin Smith, Nathaniel Farris, or Timothy Gifford. (Carroll Decl. ¶ 14); (Strange Decl. ¶ 6).

On the evening of May 11, 2017, during lockdown, Plaintiff Roberts smoked cigarettes that he had snuck into the jail. (Roberts Depo., pg. 27). The next day, Inmates Farris, Bostic, Gifford and Smith approached Plaintiff and asked him to share the tobacco. (Roberts Depo., pg. 27). Plaintiff had since stuck the tobacco back up his anus "because he figured they were going to try to make me give them what I [had.]." (Roberts Depo., pg. 27-28). When Plaintiff refused, Inmate Farris hit and kicked Plaintiff in the face, head, side, ribs and legs. (Roberts Depo., pg. 29, 32). Plaintiff suffered a busted lip, busted eye, and bruising. (Roberts Depo. pg., 33). Plaintiff claims he reported the incident to defendant Strange, saying "look at me, I need out this

unit. I said, I need Carroll back here, look at me, get me out this unit." (Roberts Depo., pg. 34).

Strange responded that he would tell Carroll and get back with him. (Roberts Depo., pg. 35).

Plaintiff also claims to have reported the assault on the kiosk grievance system. (Roberts Depo., pg. 35, 36).

Even after Plaintiff had been assaulted, Plaintiff continued to smoke his tobacco during lockdown. (Roberts Depo., pg. 38-40).   The same inmates approached Plaintiff and again asked him to turn over the contraband, but Plaintiff refused. (Roberts Depo., pg. 38, 40).   On May 15, 2017, Plaintiff was assaulted by Inmates Farris and Gifford, who kicked and punched him multiple times for refusing to give them the tobacco. (Roberts Depo., pg. 40, 41).   Plaintiff claims that he reported that he had been assaulted on May 15th to Officers Strange and Carroll. (Roberts Depo., pg. 48-49).  Strange told him to file a grievance on the kiosk. (Roberts Depo., pg. 49). Plaintiff claims Carroll did not give him a response. (Roberts Depo., pg. 49).

By May 22, 2017, Plaintiff still had the contraband. (Roberts Depo., pg. 50).  Plaintiff claims he was assaulted for a third time by the same inmates. (Roberts Depo. pg., 50).  While there were grievances regarding the May 22, 2017 assault reported on the kiosk, the grievances were not submitted by plaintiff until June 1, 2017. (Plaintiff's Grievance History).

Plaintiff requested medical treatment for the assaults on the kiosk system. (Roberts Depo., pg. 44).  The Jail's documents reflect that Plaintiff's first medical request regarding the assaults was submitted on June 1, 2017.  (Watkins Decl., bates stamp doc. 13).  The first and only time Plaintiff was evaluated by a medical provider for injuries related to the assaults was on June 7, 2017. (Watkins Decl., bates stamp doc. 36).  At that time, Plaintiff reported he was "jumped 17 days ago" and complained that he could hardly walk had broken ribs, broken pelvis, knee pain, ear pain and back pain. (Watkins Decl., bates stamped doc. 36).  The provider noted

that Plaintiff's x-ray of his pelvis just days earlier showed no anatomic abnormality[2], he had full range of motion in his knees, full range of motion in his back, no bruising or swelling deformity, and his ears were clear with no redness. (Watkins Decl., bates stamped doc. 36). The provider's impression was "no broken bones or bruising" and that Plaintiff was "malingering." (Watkins Decl., bates stamped doc. 36).

Officers Carroll and Strange have no knowledge of Plaintiff being assaulted by any inmate in May 2017. (Carroll Decl., ¶ 13; Strange Decl. ¶ 5). Officers Carroll and Strange have no knowledge of Plaintiff having issues with Inmates Farris, Bostic, Gifford or Smith either prior to or during Plaintiff's stay in AD. (Carroll Decl. ¶ 14; Strange Decl. ¶ 6). Officers Carroll and Strange have no knowledge that Plaintiff feared for his safety or health from these inmates while housed in AD pod. (Carroll Decl. ¶ 12; Strange Decl. ¶ 4). Officers Carroll and Strange did not ever see Plaintiff with a black eye, busted lip, or any of the described injuries. (Carroll Decl. ¶ 17; Strange Decl. ¶ 9). Officers Carroll and Strange have no knowledge of any request made by Plaintiff to be moved out of AD pod due to a threat to his safety or health prior to any of the alleged inmate assaults occurring. (Carroll Decl. ¶ 18.; Strange Decl. ¶ 10). Had such a request been made, it would have been documented. (Watkins Decl. ¶ 9).

### Claimed Assault by Officer Dakota Liles

On June 9, 2017, Plaintiff and another inmate had an agreement to swap food. (Roberts Depo., pg. 69). Plaintiff communicated this to officer Dakota Liles, who said that he did not have a problem with it. (Roberts Depo., pg. 69). When Plaintiff went to get the tray through the pie flap of his cell door, Plaintiff claims that Liles slammed the door on Plaintiff's arm and held

---

[2] Plaintiff's x-ray did reveal that he had contraband in the pelvic region.

it there for 15-20 seconds. (Roberts Depo., pg. 70).[3]  As a result, Plaintiff "think's he tore his rotator cuff" but "never really got it checked out, never had surgery. (Roberts Depo., pg. 79).  If he moves his arm too fast or tries to lift something too heavy – he gets a sharp pain in his shoulder. (Roberts Depo., pg. 80).  Plaintiff concedes that never received any medical treatment for his arm. (Roberts Depo., pg. 80).

### Coffee County Polices and Records

The Coffee County Jail attempts to classify inmates as best as possible. (Watkins Decl. ¶ 5).  Classification officers work to place inmates in appropriate levels of custody based on several factors, including but not limited to: an inmate's current/past convictions, current/past institutional behavior, pending charges or holds in other jurisdictions; sentenced or unsentenced and/or any other information that may be deemed appropriate with regard to his personal safety or the security of the facility. (Watkins Decl. ¶ 6).  Classification officers receive TCI and additional training on how to classify inmates in the appropriate level of custody based on these factors. (Watkins Decl. ¶ 6).

All corrections officers are trained on how to handle inmate requests to be moved to a different cell or pod within the jail.  (Watkins Decl. ¶ 7). Absent an obvious or emergent need to be moved, Officers first attempt to determine the validity of any expressed concern and whether there is a legitimate need for an inmate to be moved. (Watkins Decl. ¶ 7). Officers consider a variety of factors in determining the validity of the inmate's request, including but not limited to: the inmate's temperament (whether the concern is self-inflicted), whether the inmate is acting worried or upset, if the inmate has any signs or markings of assault, if other inmates confirm the

---

[3] Defendant Liles denies that he ever used force, let alone excessive force, on Plaintiff Roberts. (Liles Decl. ¶ 5).

acts alleged, documentation/recording of risky behavior, the alternative possible motives for movement (i.e. has friends in another pod, owes a debt to an inmate in another pod, etc.). (Watkins Decl. ¶ 7). In addition, the feasibility of moving the inmate to a different location (i.e. does the inmate have known adversaries in another pod, does he need to be placed in maximum security, etc.) is also a consideration. (Watkins Decl. ¶ 7).

It is common for inmates to request to be in a certain pod for various reasons and preferences which are unrelated to their health and safety. (Watkins Decl. ¶ 8). There are legitimate reasons why an inmate may not be transferred to another pod or cell simply because they have requested to be moved. (Watkins Decl. ¶ 8). The Coffee County Jail does not refuse a transfer to "punish" an inmate. (Watkins Decl. ¶ 8).

It is not the policy, practice, or custom of the jail to ignore threats to inmate safety, to ignore inmate grievances about safety, or to leave unpunished the inmates who engage in physical violence against other inmates. (Watkins Decl. ¶ 13). Likewise, the Coffee County Jail does not have a custom of ignoring inmate complaints about violence from the guards. (Watkins Decl. ¶ 15).

Incident reports are kept by Jail staff involved in an event, or with personal knowledge of the event, at or near the time of the occurrence. (Watkins Decl. ¶ 16). Grievances are filed by inmates on the Jail's kiosk system. (Watkins Decl. ¶ 17). In 2017, and as is true today, the kiosk system and all requests filed thereon is managed and maintained by an outside company. (Watkins Decl. ¶ 17). There is no way for anyone at the Jail to delete or otherwise manipulate the kiosk entries by the inmates. (Watkins Decl. ¶ 18). The first grievance filed by Roberts concerning an inmate assault was on June 1, 2017. (Watkins Decl. ¶ 20). There are no incident

reports regarding any of the alleged inmate or guard assaults. (Watkins Decl. ¶ 21). There is no video footage depicting any of the alleged assaults. (Watkins Decl. ¶ 22).

## STANDARD OF REVIEW

With these established facts in mind, Defendants contend that they are entitled to summary judgment on Plaintiff's Eighth Amendment claim of deliberate indifference for failure to protect in light of authorities cited below.

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). The United States Supreme Court states that "'when the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . where the record taken as a whole could lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issues for trial.'" Scott v. Harris, 550 U.S. 372, 380 (2007) (citing Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-587 (1986)). As such, "'the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issues of *material* fact.'" Scott, 550 U.S. at 380. Ultimately, the Court must decide "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Martingale, LLC v. City of Louisville, 361 F.3d 297, 301 (6th Cir. 2004).

Additionally, a non-movant "cannot survive summary judgment through speculation or conjecture." Allen v. Wal-Mart Stores, Inc., 602 F. App'x 617, 621 (6th Cir. 2015); Mitchell v. Toledo Hosp., 964 F.2d 577, 582 (6th Cir. 1992). While reasonable inferences should be drawn

in favor of the nonmoving party, the court should not base a denial of qualified immunity on an inference that is not supported by the evidence and that is unreasonable. Tolan v. Cotton, 134 S. Ct. 1861, 1868 (2014). Plaintiff must prove that *each individual defendant*, through his or her own actions, committed the tort or violated the U.S. Constitution for which he or she has been sued. Iqbal v. Ashcroft, 556 U.S. 662, 676-678 (2009).

## LAW AND ARGUMENT

In order to demonstrate liability under § 1983 as to any particular defendant, a Plaintiff must first establish that the defendant acted under color of state law and that his actions violated rights secured by the Constitution and/or laws of the United States. See Baker v. McCollan, 443 U.S. 137 (1979). The Plaintiff also must make a clear showing that the defendant was personally involved in the activity that forms the basis of the complaint. See Rizzo v. Goode, 423 U.S. 362, 377, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976); Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir. 1984). Liability under § 1983 must be based upon active unconstitutional behavior, not a "mere failure to act." Shehee v. Luttrell 199 F.3d 295, 300 (6th Cir. 1999). Additionally, the court should determine whether the right violated was "clearly established" at the time of the violation. Myers v. Potter, 422 F.3d 347, 352 (6th Cir. 2005). To do this, Plaintiff must carry the burden to plead and prove that the individual defendant violated a "clearly established" constitutional right "in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 201-202 (2001).

I.      **The record does not support conditions or actions that amount to a violation of Plaintiff's constitutional rights.**

A.   **There is no credible proof that Plaintiff was ever assaulted by inmates or by Officer Liles.**

Plaintiff's claim against each defendant is supported only by his own testimony. Defendants maintain the other proof in the record discredits Plaintiff's testimony to the point

where no reasonable jury could believe it. There is not one institutional record or recording (be it incident reports, videos, medical records, etc.) demonstrating that Plaintiff was in fact assaulted by inmates in AD pod in May 2017. Likewise, there are no records or recordings supporting that the June 9, 2017 pie flap incident ever occurred. To the contrary, Defendants have put forth unrebutted proof that had any of the alleged incidents occurred as described, reports and documentation would have been generated at or near the time period of the alleged incident and maintained by the County.

Although the standard for summary judgment generally calls for construing the evidence in the light most favorable to the non-moving party, there is an exception to the analysis when evidence so "utterly discredit's the plaintiff's story" that no reasonable jury could believe it. See Scott v. Harris, 550 U.S. 372, 380 (2007); McGowan v. Cantrell, 2010 U.S. Dist. LEXIS 8698, at *49 (E.D. Tenn. Feb. 2, 2010). In considering a similar implausible Eighth Amendment claim supported only by the plaintiff's testimony, the Sixth Circuit has stated "In assessing the risk of serious harm, courts take a common sense approach." Still v. Davis, 2018 U.S. Dist. LEXIS 37852, at *15 (S.D. Ohio Mar. 8, 2018). Under such an approach, and considering the *objective* evidence (medical records, grievance history, medical request history, and incident report history), and correspondingly, the lack thereof, there are simply no *genuine* facts in the record supporting that an assault of Plaintiff ever occurred. Accordingly, no reasonable jury could ever believe Plaintiff's story as to any defendant and his claims should be dismissed.

**A. Officers Carroll and Strange are entitled to qualified immunity as to any claim that they violated Plaintiff's constitutional rights under the allegation that they failed to protect Plaintiff from the assault by other inmates.**

The Constitution "'does not mandate comfortable prisons.'" Farmer v. Brennan, 511 U.S. 825, 832 (1994). While prisons do have a duty to protect inmates, not every injury to one

prisoner inflicted by another prisoner violates the Eighth Amendment.  Id at 834. To succeed, a pretrial detainee's conditions-of-confinement claim under the Due Process Clause must satisfy two elements: "First, the deprivation alleged must be, objectively, 'sufficiently serious." Id. 834 (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)). "Second, the prison official's 'state of mind [must be] one of deliberate indifference' to inmate health or safety." Spencer, 449 F.3d at 728 (citing Farmer, 511 U.S. at 834). The Sixth Circuit has explained that, "*generally an isolated or occasional attack is not sufficient* to state a claim." Stewart v. Love, 696 F.2d 43, 45 (6th Cir. 1982).

### i.      Objective, Substantial Risk of Harm

Plaintiff has not and cannot offer sufficient evidence regarding a genuine dispute of fact that an objectively serious and substantial risk to his health and safety existed, based on the conditions of his confinement. "To establish a constitutional violation based on failure to protect, a prison inmate first must show that the failure to protect from risk of harm is objectively 'sufficiently serious' and that 'he is incarcerated under conditions posing a substantial risk of serious harm." Bishop v. Hackel, 636 F.3d 757 (6th Cir. 2011).

Here, Plaintiff was booked into AD pod – a lower-level security pod that does not have a persistent or documented history of inmate on inmate assaults.  The pod is monitored routinely by officers both on the floor and in watch towers.  Based on his jail paperwork, Plaintiff presented with nonviolent charges, had no gang affiliation, a nonaggressive temperament, and desired to work as a barber.   Plaintiff did not present with "high risk" factors or other special conditions that would have mandated he be placed in protective custody at the time of his booking.  In addition, Plaintiff had been incarcerated in the Coffee County Jail on numerous occasions and admittedly never had altercations with other inmates.  Lastly, there is no proof that

Plaintiff was classified and or placed inappropriately due to underfunding, overcrowding, or any other reason as alleged in the *Complaint*.

Plaintiff's expressed preference to not be housed in AD with the "snitches" was insufficient to demonstrate to any officer that he faced a likelihood of serious harm posed by the inmates that assaulted him. As provided in <u>Stewart</u>, general requests to not be placed in a specific pod, and not that plaintiff had a specific threat to be assaulted, are merely allegations that do not support that there was a "substantial risk of serious harm" due to an assault by anybody. 969 F.2d at 45. Accordingly, Plaintiff was not incarcerated under conditions posing a substantial risk of serious harm and his Eighth Amendment claim must fail. <u>Bishop</u>, 636 F.3d 757.

Moreover, the Plaintiff's preexisting "problem" with informants does not establish that the harm which allegedly befell plaintiff at the hands of another inmate was in any way attributable to the forgoing problem. To the contrary, Plaintiff himself attributes his assault to his failure to turn over contraband to the other inmates. Sensibly, the "conditions" for which Plaintiff is incarcerated must contemplate those *conditions* that are caused by, or at least known to, the officers (i.e. knowingly booking a drunk/belligerent inmate in population, knowingly housing adverse gang members together due to overcrowding, etc). Here, housing an inmate with universally desired contraband (tobacco) amongst *any inmates in any pod* would expose him to a risk of harm. However, the fact that plaintiff snuck contraband into the jail in his anal cavity was unknown to any Jail staff for the duration of the time Plaintiff possessed the contraband, and therefore, the Jail had no duty to protect plaintiff from an unknown harm that was caused by the plaintiff. Accordingly, Plaintiff has not and cannot establish the objective component of the Eighth Amendment claim given the complete lack of evidence that he was incarcerated under conditions that posed him a serious risk of harm.

ii.     **Subjective state of mind**

Plaintiff has also failed to show a genuine dispute of material fact regarding the second element to his Eighth Amendment claim, as a reasonable jury could not find that either Officer Carroll or Officer Strange were "deliberately indifferent to the substantial risk of harm to Plaintiff in housing him in AD pod.  There is simply no evidence that would allow a jury to find that Defendants had the requisite knowledge.

Deliberate indifference requires that Plaintiff prove more than an ordinary lack of due care for the prisoner's safety. <u>Farmer</u>, 511 U.S. at 835.  As explained by the Supreme Court:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference . . .  An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concerns when it imposes tort liability on a purely objective basis. But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

<u>Id</u>. at 837-838 (internal citations omitted).[4]

It appears that Plaintiff challenges not only the initial decision to house him in AD, but the additional decision to keep him housed in AD despite his claimed requests to be transferred. Defendants maintain that there is no evidence that would have lead them to believe a substantial risk of harm existed as Plaintiff did not report any of the three assaults until after they had

---

[4] Even after <u>Kingsley v. Hendrickson</u>, 135 S. Ct. 2466 (2015), the Sixth Circuit and Courts within its jurisdiction have continued to apply the "deliberate indifference" standard to claims for conditions of confinement and the failure to protect regarding inmate-on-inmate assaults.  <u>v. Lauderdale Cnty</u>, 2017 U.S. Dist. LEXIS 41980, at *14 (W.D. Tenn. Mar. 23, 2017) (medical care and failure to protect); <u>Galvan v. Monroe</u>, 2016 U.S. Dist. LEXIS 168447, at *9-10 (M.D. Tenn. Dec. 6, 2016) (failure to protect); <u>Goodwin v. Davidson County Sheriff's Office</u>, 2015 U.S. Dist. 116369, at *6-7 (M.D. Tenn. Sept. 1, 2015) (failure to protect).

occurred, Plaintiff did not identify any of the persons assaulting him, Plaintiff did not have any discernible injury, Plaintiff did not articulate any reason for the repeated altercations, and Defendants did not know Plaintiff had contraband on his person.

<b>The Initial decision to place Plaintiff in AD pod and initial May 11th assault</b>

While Plaintiff may have been agitated about his placement in AD pod, he did not engage in verbally assaultive behavior and/or physical violence while in booking. If anything, Officer Carroll could have perceived that Plaintiff would be the aggressor against the AD "snitches" that he purportedly had a problem with. However, Plaintiff himself admitted that the pre-existing "problems" were not ones invoking physical violence, but rather, that he did not want to be "set up." Significantly, Plaintiff never expressed to Carroll that he had a concern or fear for his health or safety if he were to be placed in AD. Accordingly, the undisputed facts in the record demonstrate that to the extent Carroll was involved in classifying and placing plaintiff in AD, Officer Carroll did so without consciously disregarding any known risk of harm to Plaintiff.

<b>The Failure to protect from ongoing threat – May 15th and 22nd assaults</b>

With regard to the alleged May 15 and 22nd assaults, Officers Carroll and Strange did not act with deliberate indifference to Plaintiff. Officers Carroll and Strange had no reason to suspect that the assaulting inmates might harm or continue to harm someone like Roberts to whom the inmates had no apparent connection. Significantly, the officers did not know of the underlying facts indicating sufficiently substantial danger to Plaintiff, and that they were therefore unaware of a danger to Plaintiff – i.e. plaintiff was in possession of contraband that the other inmates wanted, and moreover, that he continued to possess the contraband even after he claimed to have been assaulted over it.

As reflected in the record, the officers could have reasonably discredited the risk of assault to Plaintiff as neither officer witnessed Plaintiff with any kind of injury, Plaintiff was not identifying the individuals assaulting him, and no institutional records supported that the assaults occurred or that there were any witnesses to the alleged assaults. Therefore, at most, Carroll and Strange "misjudged" the seriousness of the threats to plaintiff's safety. Marsh v. Arn, 937 F.2d 1056, 1069 (6th Cir. 1991). As provided by the Supreme Court, the officer's failure to alleviate the risk from which they should have perceived but did not, is not considered an actionable "infliction of punishment." Farmer, 511 U.S. at 837-38, 84. Accordingly, Officers Carroll and Strange are entitled to qualified immunity under a "failure to protect" theory.

**B. Plaintiff did not sustain an actionable injury as a result of the alleged constitutional violation.**

Alternatively, in the Eighth Amendment context, "a violation of a federally secured right is remediable in damages only upon proof that the violation proximately caused injury." Horn v. Madison Cnty. Fiscal Court, 22 F.3d 653, 659 (6th Cir. 1994). As shown in detail above, the proximate cause of Plaintiff's injuries were his own actions in bringing contraband into the jail, not telling officers why he was the subject of assault, not telling officers the names of the assaultive inmates, and not timely reporting the assault. Accordingly, Plaintiff has not proven that any alleged constitutional violation was the proximate cause of his injuries. Id.

Additionally, though plaintiff need not prove significant injury, he must show more than a *de minimis* one to satisfy this element of his claim. *Id.* at 8-9 (finding that Eighth Amendment allows minimal uses of physical force which are not "repugnant to the conscience of mankind") (quoting Whitley v. Albers, 475 U.S. 312, 327 (1986)). The physical injury need not be significant, but it must be more than *de minimis* for an Eighth Amendment claim to proceed. *See* Adams v. Rockafellow, 66 F. App'x 584, 586 (6th Cir. 2003).

The evidence involving the injuries sustained by Plaintiff as a result of the inmate assaults is at odds with being punched, kicked, and beaten multiple times within a two-week period. Although Plaintiff contends that he was punched in the face, kicked on the floor and brutally assaulted by more than one inmate, Plaintiff waited over a week to file a grievance requesting medical attention. More so, the proof in the record, which includes Plaintiff's medical records, demonstrates he sustained no injury to his head, his face, or any other party of his body. Thus, the bald claim by Plaintiff that he "sustained injury" as a result of the constitutional violations is insufficient to raise a genuine issue of material fact. See <u>McGowan v. Cantrell</u>, 2010 U.S. Dist. LEXIS 8698, at *49 (E.D. Tenn. Feb. 2, 2010). Accordingly, the evidence Plaintiff has adduced is insufficient to meet the standards of an Eighth Amendment claim.

**C. Officers Liles is entitled to qualified immunity as to any claim that they violated Plaintiff's constitutional rights under the allegation that he used excessive force.**

For purposes of a pretrial detainee's excessive force claim under the Fourteenth Amendment, a non-exclusive list of considerations may be relevant to the objective reasonableness inquiry: namely, (1) the relationship between the need for the use of force and the amount of force used; (2) the extent of the plaintiff's injury; (3) any effort made by the officer to temper or limit the amount of force; (4) the severity of the security problem at issue; (5) the threat reasonably perceived by the officer; and (6) whether the plaintiff was actively resisting. <u>Guy v. Metro. Gov't of Nashville</u>, 687 F. App'x 471, 472 (6th Cir. 2017).

Again, the evidence involving the injuries sustained by Plaintiff as a result of Officer Lilies' alleged actions are at odds with one's arm being forcefully held in the pie flap of a steel door. Despite Plaintiff's contentions, the proof in the record, which includes Plaintiff's medical records, demonstrates he sustained no injury to his arm, or any other party of his body and did not seek or receive any medical treatment for the alleged injury. This factor weighs greatly

against Plaintiff's claim that he was assaulted by Officer Liles and is insufficient to raise a genuine issue of material fact. Accordingly, the evidence Plaintiff has adduced is insufficient to meet the standards of an excessive force claim under 42 U.S.C. § 1983.

## II.     There is no liability against Coffee County, Tennessee in this case.

### A.  Defendant Coffee County should be dismissed because no Coffee County official committed a constitutional violation.

The United States Supreme Court has explained that a governmental entity may not be held liable unless an official violated a constitutional right.  City of Los Angeles v. Heller, 475 U.S. 796 (1986).  As demonstrated above, Plaintiff has not and cannot prove that any Coffee County official committed any underlying constitutional violation related to his assault. Accordingly, defendant Coffee County should be dismissed on this ground alone.  Heller, 475 U.S. at 796.

### B.  Defendant Coffee County should be dismissed because it did not have any policy, practice, or procedure that caused Plaintiff's assault.

A governmental entity cannot be liable unless a plaintiff proves that a governmental policy, practice, or custom is the "moving force" of the plaintiff's constitutional violation.  City of Canton v. Harris, 489 U.S. 378, 388 (1989); Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694 (1978). For a governmental entity to be held liable for having a "custom" of "inaction," Plaintiff must show (1) a clear and persistent pattern of constitutional violations; (2) notice, or constructive notice of such pattern to the governmental entity; (3) tacit approval of the deliberate indifference and failure to act amounting to an official policy of inaction; and (4) that the custom or policy of inaction was the "moving force," or direct causal link, behind the constitutional injury." Garreston v. City of Madison Heights, 407 F.3d 789, 796 (6th Cir. 2005). *See also*, Doe v. Claiborne County, 103 F.3d 495, 508 (6th Cir. 1996).

In addition to proving that the policy, custom, or usage was the "moving force," a plaintiff must prove that the governmental policy, custom, or usage amounted to "deliberate indifference" as to the constitutional rights relevant to the plaintiff's claim. Garreston, 407 F.3d at 796. As stated by the Sixth Circuit, "'deliberate indifference' in this context does not mean a collection of sloppy, or even reckless, oversights; it means evidence showing an obvious, deliberate indifference to [the violation of citizens' constitutional rights at issue].'" Doe, 103 F.3d at 508. As such, "[deliberate indifference] is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. A municipality can only be liable if the risk of a constitutional violation were plainly obvious." Garreston 407 F.3d at 796 (*citing* Stemler, 126 F.3d at 865). *See also*, Connick v. Thompson, 131 S.Ct. 1350, 1360 (2011); Board of County Commissioners of Bryan County v. Brown, 520 U.S. 397, 407-410 (1997).

In this case, Coffee County cannot be liable for any policy, practice, or procedure. Plaintiff was assaulted by Inmates Farris and Gifford for refusing to give up or share his contraband. Defendant Coffee County did not and could not have any policy, practice, or procedure that would have caused or somehow prevented Plaintiff's assault based on these circumstances. City of Canton, 489 U.S. at 388; Monell, 436 U.S. at 694. In fact, it is certainly conceivable that Plaintiff would have been at a risk for assault in any pod that he was placed in due to the universal desire for tobacco in jail. Nonetheless, the undisputed material facts in this case show that Plaintiff was not moved from AD for several reasons, including 1) The officers were not made aware of the assaults; 2) The officers were not made aware of the individuals who were causing harm to plaintiff; 3) The officers were not made aware of the fact that Plaintiff had tobacco; and 4) The officers did not see Plaintiff with any injury. Coffee County cannot be liable

because it did not have any policy, practice, or procedure that caused Plaintiff's assault.  City of

Canton, 489 U.S. at 388; Monel, 436 U.S. at 694.

Likewise, Coffee County cannot be liable for any "custom of inaction."  Plaintiff has not

and cannot show "a clear and persistent pattern of constitutional violations."  Garreston, 407

F.3d at 796; Doe, 103 F.3d at 508.  There is no indication of similar prior constitutional

violations regarding a "failure to protect" an inmate whether it is in relation to Inmates Farris

Gifford or otherwise assaulting another inmate.  Closely related, Coffee County did not have any

"notice" of prior, similar constitutional violations regarding a "failure to protect." Garreston, 407

F.3d at 796; Doe, 103 F.3d at 508.  In addition, Plaintiff has not and cannot present proof that

Coffee County "tacitly approved" the deliberate indifference such that it amounted to a custom

of inaction or that this alleged custom or policy of inaction was the "moving force," or direct

causal link, behind the constitutional injury. Garreston, 407 F.3d at 796; Doe, 103 F.3d at 508.

Accordingly, Coffee County may not be held liable under a "custom of inaction" theory.

**C. Defendant Coffee County cannot be liable for failure to train or supervise**.

The "inadequacy of a training policy may serve as the basis for § 1983 liability only where

the failure to train amounts to deliberate indifference to the rights of a person with whom the police

come into contact."  City of Canton, 489 U.S. at 388.  Explaining this "deliberate indifference"

necessary to support a failure to train claim, the United States Supreme Court stated:

> [I]t may happen that in light of the duties assigned to specific officers or employees the need
> for more or different training is so obvious, and the inadequacy so likely to result in the
> violation of constitutional rights, that the policymakers of the city can reasonably be said to
> have been deliberately indifferent to the need.  In that event, the failure to provide proper
> training may be fairly said to represent a policy for which the city is responsible, and for
> which the city may be held liable if it actually causes injury.

Id. at 390. A plaintiff must identify a particular deficiency in the training program and prove that

the identified deficiency was the actual cause of the plaintiff's constitutional injury. Id. at 390-

91. It would not be enough to establish that the particular officer was inadequately trained, nor that there was a negligent administration of an otherwise adequate program, nor that the conduct resulting in injury could have been avoided by more or better training. Id. at 390-91

Significantly, the Sixth Circuit has explained that a plaintiff cannot prove a "policy or custom" of failing to train by merely showing that one public official, even the defendant in question, was somehow inadequately trained. Carey v. Helton, 70 Fed. Appx. 291, 294 (6th Cir. 2003). Furthermore, a plaintiff must prove that that there were "several separate instances" of unconstitutional conduct or illegal activity that are similar to the alleged unconstitutional conduct or illegal activity of the case at bar. Thomas v. City of Chattanooga, 398 F.3d 426, 432-434 (6th Cir. 2005). In Thomas, the Sixth Circuit held that forty-five (45) civil lawsuits against the governmental entity did not create a genuine issue of material fact that the governmental entity failed to train its officials to such a point that excessive force became its policy. Id. at 432-434.

As to a failure to supervise claim. Plaintiff must prove that the (1) "supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." Marcilis v. Township of Redford, 693 F.3d 589, 605 (6th Cir. 2012) (citing Ellis v. Cleveland Mun. Sch. Dist., 455 F.3d 690, 700 (6th Cir. 2006)).

Coffee County cannot be held liable for failure to train or failure to supervise. As with a policy, practice, or procedure, there is no training or supervision of the corrections officers that caused or would have prevented the assaults on Plaintiff. Coffee County Jail Classification officers are receive TCI and additional training on how to classify and place inmates as best as possible based on a variety of factors. All requests to be transferred are reviewed by higher-ranking officers for validity and are only granted by those with the proper authority.

Additionally, all Coffee County officers are trained on how to report and handle inmate requests to be transferred. Plaintiff has not and cannot present any evidence that the training received by any officer in this case was in any way inadequate. The undisputed material facts demonstrate that training and the supervision of the correction officers was not "inadequate" under 42 U.S.C. § 1983.  City of Canton, 498 U.S. at 390-91.

Likewise, defendant Coffee County cannot be liable because Plaintiff cannot demonstrate (1) that Coffee County had notice of prior, similar ***constitutional violations*** such that it was "plainly obvious" of the need for more training and supervision or (2) that it failed to correct the issue through training or further supervision.  Connick, 131 S.Ct. at 1360; City of Canton, 498 U.S. at 396-97; Thomas, 398 F.3d at 432-434.

Additionally, Coffee County cannot be held liable because any failure to train or supervise did not cause Plaintiff's injury.  Carey, 70 Fed. Appx. at 294-95 (citing City of Canton, 489 U.S. at 391).  As established, Plaintiff's injuries were caused by his own actions of sneaking drugs into the jail.  There is no proof that Plaintiff's injury would have been avoided if any officer had received different or additional training or supervision on how to deal with circumstances like that of Plaintiff.  Accordingly, Coffee County cannot be liable under 42 U.S.C. § 1983 based on a failure to train or supervise theory.

## CONCLUSION

Based on the foregoing, Defendants respectfully request this Honorable Court grant judgment as a matter of law and dismiss the case in its entirety pursuant to Fed. R. Civ. P. 56.

Respectfully submitted this 1st day of November, 2019.

s/ Jeffrey R. Thompson
Jeffrey R. Thompson, BPR # 020310
Gina S. Vogel BPR# 033526
*Attorneys for defendants*

**O'Neil Parker & Williamson, PLLC**
7610 Gleason Drive, Suite 200
Knoxville, Tennessee 37919
(865) 546-7190 (phone)

### CERTIFICATE OF SERVICE

I hereby certify that on November 1, 2019, an exact copy of the foregoing pleading was filed electronically.  Parties may access this filing through the Court's electronic filing system. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt as follows:

Drew Justice, Esq.
The Justice Law Office
1902 Cypress Drive
Murfreesboro, TN 37130


/s Jeffrey R. Thompson
for O'Neil, Parker & Williamson, PLLC