IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

PHILIP ROBERTS,

    Plaintiff                                                            4:18-cv-0004-SKL

v.

COFFEE COUNTY, TENNESSEE et al.,

    Defendants

---

### PLAINTIFF'S RESPONSE IN OPPOSITION
### TO MOTION FOR SUMMARY JUDGMENT

---

All the Defendants have moved for summary judgment, (RE 49-50), and the Plaintiff, Philip Roberts, now opposes their motion. Generally speaking, a reasonable jury could find that Plaintiff is telling the truth and that the Defendants are lying. Further, the Plaintiff has specifically produced evidence that the individual officers were at fault. Further, he has produced evidence of a series of events showing poor supervision by Coffee County.

### SUPPLEMENTAL FACTS

Philip Roberts was attacked three times in Pod AD by inmates, as described in his Complaint. (Declaration of Philip Roberts ¶ 1). The three dates involved were May 11, May 15, and May 22. (*Id.*) After each occurrence, he contacted the authorities and complained about the situation, asking to be moved. (Roberts Declaration ¶ 2). His communications included verbal requests, as well as electronic transmissions on the kiosk. (*Id.*) For example, he specifically wrote grievances and medical requests on May 11, 2017. (RE 49-5, Deposition of Phil Roberts,

1

Transcript p. 34-35, PageID #189). He also specifically spoke to Officer Chase Strange, one of the Defendants. (RE 49-5, Roberts Depo. Tr. 34, PageID $ 189). His requests to be moved were apparently ignored.

Chase Strange was a jail guard, whom Coffee County continued to employ even though he had been reprimanded multiple times for various faults. During the assault on May 15, 2017, he was the guard in the tower, supposed to be keeping the inmates safe. (Roberts Declaration ¶ 7). Prior to the incidents with Roberts, his faults included sleeping on duty, failure to attend work, insubordination, and failing to perform duties. (Termination Notice of Chase Strange). He was later fired a few weeks after Roberts's situation, for unrelated misconduct. (*Id.*)

In this case, the Jail has failed to produce many of the kiosk entries and instead has denied their existence, leading Roberts to conclude that Coffee County must have deleted them or otherwise hidden them. (Roberts Declaration ¶ 6; *see also* RE 49-5, Roberts Depo. Tr. 36, PageID # 189). For example, Roberts filed grievances on May 11, 2017 after being attacked the first time. (RE 94-5, Deposition of Phil Roberts, Transcript p. 35, PageID #189). He also filed a grievance about Officer Dakota Liles's assault on June 09, 2017. (RE 49-5, Roberts Depo. Tr. 73, PageID # 193). But he "didn't figure it would get answered, because nothing ever got answered" at the Coffee County Jail. (*Id.*)

On May 25, 2017, Roberts was finally moved away from Pod AD. The only extent record documenting the reason for the move says, "MOVED PER CLASSIFICATIONS INMATE CANT LIVE IN ANY POD WHILE IN AD INMATE HAD ALTERCATION WITH OTHER INMATES 4462 JC FOR HIS PROTECTION DO NOT MOVE UNLESS CLASSIFICATION KNOWS." (Roberts Activity Sheet, Entry for May 25, 2017) (emphasis in original). The

classifications officer whom Roberts was routinely dealing with was apparently John Carroll. (Roberts Declaration ¶ 3; RE 49-5, Roberts Depo. Tr. 34, PageID # 189).

Since then, Roberts has requested all other records documenting the "altercation" mentioned in the movement note, and asked for all records of any discipline against the inmates for that altercation. (Oct. 14, 2019 RFP Response ¶ 2). For whatever reason, Coffee County has not produced any. (*Id.*)

**Other Incidents**

As noted in the Complaint (RE 1, ¶ 44, PageID # 7), Coffee County was previously sued for similar apathy toward another prisoner's safety. Testimony from that other inmate, Blake Cretacci, reflects that he likewise asked to be moved on multiple occasions because he experienced problems with the inmates in his Pod, apparently for failing to participate in a riot that those other inmates. (Deposition of Blake Cretacci, Transcript p. 94 and 112-113). Despite his requests, he was not moved. (*Id.*) He then was assaulted *twice* on the same day, October 11, 2015, after the guards witnessed the end of the first altercation but failed to discipline the offenders. (Cretacci Depo. Tr. 78-79).

A report from another incident on July 26, 2017 shows that the same assailants that Roberts now identifies later went into another cell, and beat another inmate named Joshua Johnson. (Joshua Johnson Report, July 26, 2017). In that report, the "ACTION(S)/ RECOMMENDATION(S)" section is left blank. (*Id.*) The report seems to indicate that no disciplinary action was taken then, either.

An incident report involving another inmate on August 29, 2017, Jeremiah Allsopp,

3

shows that this inmate actually warned guards there was going to be an altercation between himself and his cellmate unless he was moved, but the guards decided "it really was no problem." (Jeremiah Allsopp Report, Aug. 29, 2017). After the inmate then demanded a change of cells and allegedly cussed at the guard over the intercom, the officer went down to take him back to his cell. (*Id.*) Once they got to the cell and the inmate told the guard not to lay his hands on him again, the guard laid hands on him, and "brought him to the ground[.]" (*Id.*)

On December 02, 2019, regarding another inmate named Danny Jacobs, judgment was entered against Coffee County for excessive force occurring at the jail on October 08, 2018. (Jacobs Judgment and Jacobs Complaint).

## ARGUMENT

### 1. Credibility in General

For their first argument, the Defendants have said that they are entitled to summary judgment because Mr. Roberts is not credible. The problem is that there is no way for the Court to make that determination without hearing their testimony. In *Scott v. Harris*, the court found that a dashboard video of a car chase "so utterly discredited" the plaintiff's affidavits that no reasonable jury could believe him. 550 U.S. 372 (2007). In this case, there was no such video because the guards never bothered to preserve any, or (seemingly) to investigate his allegations or document the situation at all. Now the Defendants simply point to their own supposed honesty, and their generalized failure to document Roberts's problems, as proof that he never experienced any problems.

Basically their evidence consists of their own testimony, and the records of their in-house

nurse. But the testimony of the Defendants and their Chief Frank Watkins is suspect, because they are the ones being sued. The reports of the in-house nurse are likewise suspect, because she only saw the Plaintiff seventeen days after the third assault. Further, the nurse undeniably waited at least six days even to examine the patient. That is, even assuming that none of Roberts's kiosk entries have been deleted or concealed, he did (i.e., at the latest) request medical attention on June 01, 2017. (RE 49-4, Declaration of Watkins with Attachments, PageID #194). Still he was not seen until June 07, 2019. This medical visit was seventeen days after the third assault, making any visible injuries certainly less obvious, if not completely healed. A nurse who waits six days to examine someone claiming to have been assaulted is inherently suspect, as arguably such delay would itself be a due process violation. Even with that seventeen-day delay from the latest assault, she still gave him Naproxen for "swelling" and/or pain. (RE 49-5, Roberts Depo. Tr. 66, PageID # 192; *see also* Nurse's Notes June 07, 2017, found at RE 49-4 p. 36, PageID #194). And she reported that he experienced "pain on palpation." Nurse's Notes).

      The Defendants have also pointed to the supposed failure of Roberts to complain during May 2017, but Roberts testifies that he did complain — both electronically and orally. Regarding the electronic communications, he testifies that the earlier kiosk entries have either been deleted, or concealed. As he said, it is rather suspicious that *all* his entries from that entire Pod AD are now gone. (RE 49-5, Roberts Depo. Tr. 36, PageID # 189). The "utterly discredited" rule that the Defendants have advocated for only applied when there were "no indications that th[e] video was doctored or altered in any way, nor any contention that what it depicts differs from what actually happened." *Scott*, 550 U.S. 372 at 378. Here there is indeed dispute. In fact, it is doubtful that Captain Watkins is even competent to testify about the kiosk entries. He has claimed that he does

5

not maintain the kiosk, and that he lacks any power to delete its entries. But if he truly lacked power to maintain or delete the records, then he is not a records custodian, and cannot testify about the records. *See* Fed. R. Evid. 803(6)(D). Nor is there any alternative reason given why he would be a "qualified witness." *See id.* Finally, even assuming that the kiosk entries were truly un-deletable, it still would not verify that all of them have been disclosed. The Defendants are just asking the Court to trust them.

The Defendants have also claimed that no jail records show that Roberts was ever assaulted, but this generalized absence of records only shows their deliberate indifference. Fortunately, one record was kept — not deleted — namely, Roberts's movement history. It briefly mentions that he was involved in an "altercation" with multiple "inmates," apparently requiring him to be moved because he "can't live" where he was previously. (Roberts Activity Sheet, May 25, 2017). The plural use of the word "inmates" shows that it was no fair fight, either. When Plaintiff Roberts later requested the report on that incident, Coffee County claimed that no reports exist. (RFP Response, Oct. 14, 2019). *Something* happened to Roberts in May 2017. Coffee County just claims not to know what. Apparently Coffee County and its people did not care enough about what happened even to write it down, or else they deliberately failed to maintain the record.

In sum, there is evidence from which a reasonable jury could side with the Plaintiff. This case is wholly unlike *Scott v. Harris*, 550 U.S. 372, where the video was indeed the best evidence, where its authenticity and relevance were undisputed, and where it "utterly discredited" the plaintiff's testimony.

6

Case 4:18-cv-00004-SKL   Document 56   Filed 12/09/19   Page 6 of 9   PageID #: 234

### 2. Carroll

Roberts testifies that Carroll initially placed him in the cell despite warnings that Roberts would have problems there. Roberts also testifies that he repeatedly asked to be moved, and that Carroll (in charge of classifications) never would move him. (Roberts Declaration ¶ 3, RE 49-5, Roberts Depo. Tr. 34, PageID # 189). And although Carroll claims now that he never had any knowledge of Roberts being assaulted, a record from "JC" shows that Roberts was involved in at least one "altercation" with multiple inmates. (Roberts Activity Sheet, 05/25/2017.) Hence, there is evidence that John Carroll was indeed liable for the injuries at issue.

### 3. Strange

Although Strange has claimed that he never knew about any assaults, either, Roberts testifies that Strange was specifically the one in the tower during the second assault. (Roberts Declaration ¶ 7). He had also spoken to Strange already, following the first assault. Strange took no action to protect him during the second assault, instead letting him get assaulted. Therefore, there is evidence that Strange was liable for damages from that incident.

### 4. Liles

Although Liles has claimed that he never assaulted anyone, Roberts testifies that Officer Liles assaulted him on June 09, 2017 by slamming a metal slab onto his arm. (RE 49-5, Roberts Depo. Tr. 69-71, PageID # 192-193). Therefore, there is evidence that Liles is liable for the excessive force. And although Liles claims that the medical records exonerate him, there was no medical evaluation following Liles's assault.

### 5. Coffee County

Coffee County has claimed that they are innocent because their jail guards hardly ever do anything wrong. But Roberts testifies that the guards let him get assaulted by inmates, twice, *after* he had already been assaulted once, and then finally a guard assaulted him yet again. His requests to be moved were repeatedly ignored. (Roberts Depo. Tr. 34-35, PageID # 189). Roberts testifies that Coffee County is overtly hiding (or deleting) records of the incidents. (Roberts Declaration ¶ 6; *see also* RE 49-5, Roberts Depo. Tr. 36, PageID # 189). Further, even though Coffee County has specifically produced some messages from Roberts claiming to have been assaulted, (RE 49-4, Watkins Attachments, p. 9, PageID # 156), it appears that no one investigated even those allegations. The responses to the grievances are left blank. (*Id.*). Roberts can also show that, among other disciplinary violations, Officer Strange had already been caught sleeping in the tower without being meaningfully disciplined or fired. (Strange Termination Notice). Ensuring the safety of the inmates is not much of a priority in Coffee County.

Given that Roberts's facts by themselves contain multiple instances of conduct, it is doubtful that more is even needed for *Monell* liability. Nonetheless, Roberts can show has indeed ignored requests to be moved by inmates such as Blake Cretacci and Jeremiah Allsopp. (Cretacci. Depo. Tr. 113; Allsopp Report, Aug. 29, 2017). He can further show that inmate Cretacci was allowed to be attacked twice in the same morning. (Cretacci Depo. Tr. 78-79). Allsopp wound up getting tackled after he "demand[ed]" to be moved. (Allsopp Report, Aug. 29, 2017). Roberts can further show that another inmate was apparently beaten by the same inmates, again without being disciplined. (Johnson Report, July 26, 2017). And he can show that Coffee

8

County has otherwise been found liable for excessive force by its jail guards. (Jacobs Judgment and Complaint).

## CONCLUSION

The Motion for Summary Judgment should be denied..

Respectfully submitted,

/s/ Drew Justice
Drew Justice #29247
Attorney for Philip Roberts
1902 Cypress Drive
Murfreesboro, TN 37130
(615) 419-4994
drew@justicelawoffice.com

## Certificate

The undersigned lawyer certifies that this December 09, 2019, he has delivered a copy of this motion via the Court's e-filing system to Jeffrey Thompson, 7610 Gleason Drive, Suite 200, Knoxville, TN 37919 <jthompson@opw.com>.

/s/ Drew Justice
Drew Justice #29247